FILED
SUPERIOR COURT
OF GUAM

2023 MAR 31 PM 5: 47

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| IN THE MATTER OF THE ESTATE | PROBATE CASE NO.: PR0113-20 |
|---|---|
| OF | **DECISION AND ORDER**<br>*Re: Eric J.A. Sian's Motion to Recognize Decedent's Devise of One-Sixth (1/6) Interest in Nimitz Hill Property* |
| JIMMY E. SIAN, | |
| Decedent. | |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on January 12, 2023, for a status hearing. Present at the hearing were: Attorney John C. Terlaje for Petitioner Thelma Sian; Attorney Seth Foreman;[1] and Attorney Cynthia V. Ecube for interested party, Leilani Stone. Having considered the arguments, briefs, and applicable law, the Court hereby **DENIES** Eric Sian's Motion to Recognize Decedent's Devise of One-Sixth (1/6) Interest in Nimitz Hill Property.

## BACKGROUND

The instant case arises from a Petition for Special Letters of Administration filed on September 25, 2020, by Petitioner Eric Sian ("Eric"). On October 7, 2020, Petitioner Thelma Sian ("Thelma") filed a Petition for Probate of Will and Appointment of Executrix. After the

---

[1] On April 8, 2022, Attorney Seth Forman was appointed as Regulation Counsel for Attorney Mark Smith who previously represented Eric Sian. About two months later, on June 27, 2022, Eric Sian filed a Substitution of Counsel, *pro se*. As such, with the parties having no objection to relieving Attorney Seth Forman as Regulation Counsel in the instant case, the Court relieved Attorney Seth Forman. *See* Min. Entry 11:04:50AM (Jan. 12, 2023).

disqualification of the previous two judges, the instant case was assigned to this Court on March 2, 2021.

On June 1, 2021, Eric filed an Objection to the appointment of Thelma as Executrix. Thelma filed her Response on June 30, 2021, and Eric filed his Reply on July 6, 2021. Then on July 28, 2021, the Court issued an Order Appointing Thelma as Executrix.

About one month later, on August 24, 2021, Thelma filed a Petition for an Order determining that Sale of Real Property is to the Advantage of the Estate, which Eric did not oppose.[2] *See* Notice of Non-Opp'n. (Oct. 14, 2021). A hearing on the Petition was held on October 14, 2021, wherein the Court granted the Petition. *See* Min. Entry, 04:33:30 PM (Oct. 14, 2021).

On August 27, 2021, Eric filed a Claim Against the Estate. Then on August 31, 2021, Eric filed the instant Motion to Recognize Decedent's Devise of One-Sixth (1/6) Interest in Nimitz Hill Property. Thelma filed her Response on September 13, 2021. That same day, Eric filed a Second Claim Against the Estate. Then on September 24, 2021, Eric filed his Reply to the instant motion. A hearing on the claim against the Estate was held on October 12, 2021. During the hearing Attorney Mark Smith, on behalf of Eric, moved the Court to take testimony of witnesses, including by but not limited to Thelma, Leilani Stone, Judy Sablan, Johnathan, Eric, and Eric's mother. *See* 12:34:35 PM (Oct. 12, 2021). As such, the Court decided to coordinate an evidentiary hearing to be set before Magistrate Judge Sison. *See* Min. Entry, 12:25:20 PM (Oct. 12, 2021).

On April 27, 2022, Thelma filed a Return of Sale of Real Property and Petition for Confirmation. A hearing on the Petition was held on May 24, 2022, wherein the Court granted the Petition. During the hearing, the Court also explained that it had not been able to coordinate

---

[2] Referencing the sale of Unit C-21, Guahan Court Condominium.

with Magistrate Judge Sison regarding the evidentiary hearing as it previously discussed during the October 12, 2021 hearing, and that the Court would follow up. *See* 11:09:18 AM (May 24, 2022).

Then on November 28, 2022, Thelma filed a Request for Status Hearing. A status hearing was held on January 12, 2023, wherein the Court referenced previous discussions about referring the matter to Magistrate Judge Sison, however, it did so in the context of mediation—not for an evidentiary hearing. The Court then said it would rule on the instant motion based on its filings, and the matter went under advisement that day. *See* Min Entry, 11:11:34 AM (Jan. 12, 2023).

## DISCUSSION

Eric argues that Jimmy's act of giving his 1/6 interest to Eric, subsequent to his Will, is clearly indicative of Jimmy's intention to revoke any language in his Will providing a residual interest to Thelma. Further, Eric argues that the property interest was no longer a part of the Estate at the time of Jimmy's death, and thus it was adeemed. *See* Mot., pp. 4 – 5 (Aug. 31, 2021). In order to address these arguments, the Court's analysis begins with whether Jimmy made *inter vivos* gift of the 1/6 interest to Eric.

### I.    ORAL GIFT OF PROPERTY

Title 21 GCA Section 4101 dictates that:

> An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred *only by operation of law, or by an instrument in writing*, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing.

21 GCA § 4101 (emphasis added); *see also In Re Moylan*, 2011 Guam 16 ¶ 39. Generally, the statute of frauds is satisfied when there is a writing subscribed by the grantor transferring the property to the grantee. *See Moylan*, 2011 Guam 16 ¶ 39.

However, the Supreme Court of Guam recognized an exception the general rule above. "[U]nder the doctrine of estoppel, an oral promise to convey real property is removed from the statute of frauds and is enforceable under extreme circumstances in order to prevent an injustice to the donee." *Id.*; *see also Lujan v. Quanata*, 2014 Guam 20 ¶ 21. Further, "an oral gift of property has been sustained "only upon clear and satisfactory proof of the identity of the property and of an intention on the part of the donor *to presently convey title to the real property.*" *Id.* (emphasis added); *see also Lujan*, 2014 Guam 20 ¶ 21. "Moreover, a gift of real property cannot be effected orally unless possession of the property is both given and accepted under the terms of the gift, and the donee performs acts to carry out the purpose of the gift." *Id.* (citing *Husheon v. Kelley*, 124 P. 231, 235 (Cal. 1912)). "Thus, the donee must perform acts in reliance on the parol gift that change the donee's position to his substantial detriment, which must be of a sufficient degree to make it unjust not to effect the attempted transfer to him." *Id.* For example, any expenditure made in reliance on the gift must add improvements to land tending to enhance its value over and above value of property to the promise. *Id.*; *see, e.g. Green v. Brown*, 232 P.2d 487, 492 (Cal. 1951).

The Guam Supreme Court recognized that courts are generally suspicious of gift claims that are made for the first time after the alleged donor's death, "because of the facility with which, after a donor is dead, a fraudulent claim may be founded on a pretended gift." *Lujan*, 2014 Guam 20 ¶ 21 (citing *Blonde v. Jenkins' Estate*, 281 P.2d 14, 14 (Cal. Dist. Ct. App. 1955)).

**a) Intent to presently convey title**

Therefore, the first issue before the Court is whether Jimmy executed an oral *inter vivos* gift of his 1/6 interest in the Nimitz Property so as to presently convey such interest to Eric. Jimmy did not execute an oral gift to Eric for two reasons.

First, Eric fails to provide clear and satisfactory proof that Jimmy intended to presently convey title or interest to the Nimitz Property. The Court turns to Robert Yurko's Declaration:

> The decedent had to pay for everything to maintain the house and pay all the real property taxes which the siblings did not contribute any money, according to the Decedent. I felt bad and asked him what he was going to do. He told me, with a firm voice, "*I am going to give it to Eric and his family.*" He began to tell me that Eric has been living at the house and helps in the maintenance of the house.
>
> The Decedent also told me since he was not staying in the Nimitz Hill house. [sic] he gave Eric the responsibility to upkeep the house and property *so one day he will transfer the house to Eric either a deed of gift* or sell it to him. He told me he was *getting a lawyer to get the property under his name only so he can let Eric have the house/property* from him, his father.

Yurko Decl., p. 2 (Jul. 6, 2021) (emphasis added). Yurko's Declaration does not reveal or demonstrate a present intent to convey title or interest to Eric. At best, Yurko's Declaration reflects Jimmy's prospective intent—not present intent—to convey the Nimitz Property.

Second, the Nimitz Property was not entirely Jimmy's to convey in the first place. The Court now turns to Leilani V. Stone's Declaration:

> On or about 2010, when my siblings and I acquired our one-sixth (1/6th) interest in and to our Piti family residence, from our parents' [sic] in Probate Case No. PR0195-08, we collectively agreed to keep our Piti family residence and allow our brother, JIMMY, to have his son, Eric, move in temporarily, rent free.
>
> Over the years, my siblings and I would discuss our intentions for our Piti family residence but nothing materialized until my sister, Judy Sablan, in 2018 decided to sell her personal residence, which was next door to our Piti family residence. My four (4) siblings, Judy Sablan, Ted Sian, Lisa Taitano, and Laura Villanueva, decided to sell their rights, title and interests in and to our Piti family residence....
>
> In 2020, when I acquired my four (4) siblings' (i.e., Judy Sablan, Ted Sian, Lisa Taitano [,] and Laura Villanueva), rights, title and interests, *I owned a five-sixth (5/6th) interest in and to our Piti family residence.*

Stone Decl., pp. 2 – 5 (Oct. 11, 2021) (emphasis added). Stone's Declaration reflects Jimmy did not and does not entirely own the Nimitz Property such that he was free to gift it to Eric. Before his death, Jimmy only owned a 1/6 interest in the Nimitz Property. Put simply, based on the declarations discussed above, Jimmy neither made an *inter vivos* gift of his 1/6 interest to Eric, nor did Jimmy entirely own the Nimitz Property such that it could be gifted to Eric. Without the intent to presently convey or gift interest or title required of an *inter vivos* gift, the Court does not reach the next inquiry of whether Eric performed acts of reliance on the gift. As such, the Court concludes that there was oral *inter vivos* gift of interest or title to the Nimitz Property from Jimmy to Eric. While this analysis is dispositive of Eric's arguments, the Court still addresses the argument that Jimmy's 1/6 interest was adeemed from the Estate.

## II.     ADEMPTION

Title 15 GCA Section 2901 governs gifts before death as ademptions:

> A *gift* before death shall be considered as an ademption of a bequest or devise of the property given; but such gifts shall not be taken as an advancement to an heir or as an ademption of a general legacy unless such intention is expressed by the testator in the grant or otherwise in writing, or unless the donee acknowledges it in writing to be such.

15 GCA § 2901. In other words, in this case the *inter vivos* gift must exist for ademption to occur. Therefore, the question becomes whether an *inter vivos* gift of Jimmy's 1/6 interest was made such that it was adeemed from the Estate. The Court yields the same conclusion above. There was no gift of interest or title to the Nimitz Property from Jimmy to Eric because (1) Jimmy did not intend to presently convey interest or title; and (2) Jimmy did not entirely own title to the Nimitz Property to gift such title to Eric. As such, the Nimitz Property and Jimmy's 1/6 interest therein are not adeemed and remain a part of the Estate.

## CONCLUSION

For the reasons set forth above, the Court hereby **DENIES** Eric Sian's Motion to Recognize Decedent's Devise of One-Sixth (1/6) in Nimitz Hill Property.

**IT IS SO ORDERED** _____ MAR 3 1 2023 _____ .


_____

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**